UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAMIAN C. STEELE,

     Plaintiff,

v.                         CASE No. 8:08-CV-699-T-30TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.

_____

## REPORT AND RECOMMENDATION

     The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, I recommend that the decision be affirmed.

I.

     The plaintiff, who was twenty-eight years old at the time of the administrative hearing and who has an eleventh grade education, has worked

---

[1]This matter comes before me pursuant to the Standing Order of this court dated January 5, 1998. See also Local Rule 6.01(c)(21).

at such jobs as fast food worker/cashier and stock clerk/inventory scanner (Tr. 103, 323, 325). He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled due to unexplained seizures (Tr. 102). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had a severe impairment of a seizure disorder (Tr. 42). The law judge concluded that the impairment limited the plaintiff to light to medium work "with occasional climbing (but never ladder/rope/scaffold), balancing, stooping, kneeling, crouching and crawling and avoidance of dangerous moving machinery, heights, hazards, temperature extremes, and direct sunlight" (id.). The law judge determined, based upon the testimony of a vocational expert, that these limitations did not prevent the plaintiff from returning to past work as a fast food worker or inventory scanner (id.). Accordingly, the law judge decided that the plaintiff was not disabled. The Appeals Council initially let the decision of the law judge stand as the final decision of the defendant (Tr. 11). It subsequently vacated that denial and reinstated the request for review

(Tr. 9). After the submission of additional materials by the plaintiff, the Appeals Council again denied review, and explained why it was taking that course (Tr. 2-3).

## II.

A. In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The Act provides further that a claimant is not disabled if he is capable of performing his previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C.

405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson</u> v. <u>Perales</u>, 402 U.S. 389, 401 (1971), <u>quoting</u> <u>Consolidated Edison Co.</u> v. <u>NLRB</u>, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." <u>Adefemi</u> v. <u>Ashcroft</u>, 386 F.3d 1022, 1027 (11th Cir. 2004) (<u>en</u> <u>banc</u>), <u>cert</u>. <u>denied</u>, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. <u>Grant</u> v. <u>Richardson</u>, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence,

but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. See 20 C.F.R. 404.1520, 416.920. One of the threshold inquiries (step two) is whether a claimant has a severe impairment. 20 C.F.R. 404.1520(c), 416.920(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1521(a), 416.921(a). If an impairment is not severe, then a claimant is deemed to be not disabled. 20 C.F.R. 404.1520(c), 416.920(c).

When an impairment is severe, a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(e), 416.920(e). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in substantial

numbers in the national economy. In such cases, the regulations direct that an individual's residual functional capacity, age, education and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules, known as "guidelines" or "grids," that are appended to the regulations. 20 C.F.R. Part 404, Subpart P, Appendix 2.

## III.

The plaintiff based his claims for disability benefits upon a seizure disorder. The law judge found that the plaintiff did suffer from a seizure disorder and that, under the Social Security Administration's liberal definition, that condition constituted a severe impairment. See 20 C.F.R. 404.1521(a), 416.921(a). The law judge did not find that the plaintiff had any other severe impairment.

The law judge referred to Social Security Ruling 87-6, 1987 WL 109184 (S.S.A.), which more than twenty years ago stated that epilepsy is generally not disabling.[2] Thus, that Social Security Ruling stated (id.):

> During the past decade, rapid growth in the knowledge of more effective clinical approaches to

---

[2]Epilepsy is the term used to describe a condition of recurring seizures.

epilepsy has taken place. Potent anticonvulsants are available and reliable methods to determine blood anticonvulsant levels have been developed. This has made possible the more precise "tailoring" of anticonvulsant drugs to the patient's needs. Due to these advances, most epileptic seizures are controllable and individuals who receive appropriate treatment are able to work.

...

As a result of modern treatment which is widely available, only a small percentage of epileptics, who are under appropriate treatment, are precluded from engaging in substantial gainful activity (SGA). Situations where the seizures are not under good control are usually due to the individual's noncompliance with the prescribed treatment rather than the ineffectiveness of the treatment itself.

There is certainly no reason to think that, in the more than twenty years since these statements were made, treatment for seizure disorders has regressed; rather, it is reasonable to assume that treatment has advanced. The plaintiff has not attempted to show otherwise. Moreover, he has not pointed to any evidence indicating that he is in the small percentage of individuals as to whom treatment is not effective.

In this case, the law judge specifically found that "[t]he medical record contains evidence of the claimant's noncompliance with prescribed

therapy" (Tr. 41). This finding is supported by substantial evidence since, as the law judge pointed out, "[e]mergency room records dated August 17, 1999, March 4, 2003, and December 10, 2003[,] indicated noncompliance with seizure medication" (id.). The record also contains another emergency room note on February 11, 2002, indicating that the plaintiff left against medical advice with the discharge instruction to "Resume Meds" (Tr. 205).

Moreover, no doctor has opined that the plaintiff is disabled due to his seizure disorder. At most, they have prescribed precautionary limitations (see Tr. 167, 169, 256, 258). The law judge accepted those limitations and restricted the plaintiff, among other things, to never climbing ladders, ropes, and scaffolds, and to the avoidance of dangerous moving machinery, heights, hazards, temperature extremes, and direct sunlight (Tr. 42).

The plaintiff's claim of disability is also contradicted by the fact that the plaintiff's seizures began around age sixteen and he was able to work at various jobs subsequently. The general manager of a car wash where the plaintiff worked commented that, "when Mr. Steele was taking his medication his work and attitude was very good and [he was] capable of p[er]forming any

task assigned" (Tr. 150). Significantly, the plaintiff has made no showing that his condition deteriorated after he worked at the jobs.

In sum, there is ample basis in the record for the law judge's conclusion that the plaintiff's seizure disorder is not disabling. Nevertheless, plaintiff's counsel has followed his typical shotgun approach of firing multiple challenges. All of them are off-target.

The plaintiff argues first that his jobs as fast food worker (cashier) and inventory scanner did not amount to substantial gainful activity and thus could not constitute past relevant work to which the plaintiff could return. However, the Commissioner cogently explains in his memorandum that the plaintiff had sufficient earnings as cashier at Arby's to meet the requirements for substantial gainful activity (Doc. 15, p. 9). Although the Commissioner acknowledges that the evidence is less clear with respect to the job of stock clerk/inventory scanner, the showing that the job of fast food worker/cashier was past relevant work is enough.

Furthermore, the Appeals Council pointed out that the vocational expert opined that the plaintiff could perform the jobs of fast food worker and inventory scanner, so that, even if those jobs did not constitute past relevant

work (and the job of fast food worker plainly did), they would represent other work in the national economy that the plaintiff could perform (Tr. 3). Accordingly, even if there were an error at step four of the Commissioner's sequential analysis regarding past work, that error would be harmless in light of step five which considers whether the plaintiff could perform other work that exists in the national economy.

The plaintiff's second contention is predicated upon the assertion that he did not waive his right to representation at the hearing and that the law judge therefore had a special duty to develop the record. The plaintiff's presentation does not fairly state the circumstances surrounding the plaintiff's waiver of representation.

The plaintiff had retained a representative in this matter. However, she withdrew before the hearing due to a lack of contact by the plaintiff (Tr. 45). The plaintiff therefore plainly understood his right to a representative and how to go about obtaining one. About a week and a half before the hearing, the plaintiff asked for a postponement so that he could get a representative, and the request for a postponement was granted (Tr. 320).

Nevertheless, the plaintiff showed up and sought to go forward with the hearing.

The plaintiff states that "the ALJ rather than requiring Mr. Steele to attempt to find a representative, goes ahead with the hearing anyway" (Doc. 13, p. 4), thereby implying that the law judge pressed forward with the hearing without consideration of the plaintiff's interest. In fact, the record demonstrates that the plaintiff's unexpected appearance presented an inconvenience to the law judge (as well as another claimant) because the law judge had booked the time spot after the plaintiff's request for a postponement (Tr. 342). These circumstances show that the law judge was not seeking to press the plaintiff to proceed without a representative, but rather was accommodating the plaintiff's desire to proceed with the hearing (Tr. 346).

Importantly, the plaintiff signed a form waiving his right to be represented at a hearing (Tr. 44). Moreover, he confirmed at the hearing that he wished to proceed without a representative (Tr. 320-21). Under these circumstances, the waiver of representation at the hearing is valid.

In light of the valid waiver, the plaintiff's assertion that the law judge had a special duty to develop the record is legally unsubstantiated. Cowart v. Schweiker, 662 F.2d 731 (11th Cir. 1981), which was relied upon by the plaintiff to establish a special duty, involved an invalid waiver of counsel. Since the waiver of representation in this case was valid, Cowart v. Schweiker is inapposite. In other words, there is no special duty in these circumstances. Robinson v. Astrue, 2007 WL 1072927 (11th Cir. 2002) (unpub. dec.).

Furthermore, the law judge's duty to develop the record fully does not apply to the period after the filing of the applications for benefits; at that point, it is the plaintiff's responsibility. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). In this case, while the plaintiff told the law judge he was going to take a test four days after the hearing, the law judge did not tell the plaintiff that he (the law judge) would obtain those test results (Tr. 333). The law judge did say that he would keep the record open for one week (Tr. 356). And if the plaintiff needed more time to submit test results, he could have asked the law judge for more time. See Robinson v. Astrue,

supra, 2007 WL 1072927 at *2. For these reasons, the law judge did not fail in his duty to develop the record.

Moreover, even if there had been such a failure, that would not justify a remand. Where, as here, there has been a waiver of the right to representation, the "claimant must show 'clear prejudice or unfairness' caused by lack of [representation] in order to prove that he was denied a full and fair hearing and is entitled to a remand to the [Commissioner]." Kelley v. Heckler, 761 F.2d 1538, 1540 n. 2 (11th Cir. 1985). The plaintiff cannot make such a showing.

In an effort to establish that the law judge failed to develop the record, the plaintiff relies principally upon statements from Dr. Lalitha E. Jacob, a neurologist. After an evaluation on August 9, 2004, Dr. Jacob stated (Tr. 296):

> May need to avoid working with fire, water, heavy moving objects, sharp cutting edge, etc. (Since the patient has been working at a fast food place and car wash, a referral has been given to the vocational rehab for the patient to get training to do a more [sic] job more as a desk job which does not involve any of the above which could pose a danger if the patient has a seizure.[)] Again, advised to adjust the dosage of the medication in

such a way that the level is on the upper side of
normal range if he is going to be on monotherapy.

The plaintiff was seen again by Dr. Jacob on November 4, 2004.
She reported that the plaintiff had "a sleep deprived EEG done on 8/31/04
which did show very mild epileptogenic potential noted diffusely and
transiently, especially from the left temporal cortex" (Tr. 297). She added
(id.):

> The patient was advised to avoid driving and also
> working with water, fire, heavy moving objects,
> sharp cutting edge, etc. He may do a job that
> involves example [sic]: sitting at a desk avoiding
> the things mentioned above.

Contrary to the plaintiff's suggestion, Dr. Jacob was not opining
that the plaintiff was limited to a desk job; rather, that was merely one type
of job that would not expose the plaintiff to the dangers that she listed.
Importantly, the law judge's residual functional capacity finding covered
those dangers and more.

Accordingly, the Appeals Council concluded (Tr. 2):

> Dr. Jacob indicated that an EEG showed only very
> mild epileptogenic potential, and she has treated
> you with medications. Dr. Jacob indicated that you
> are able to work, although with some limitations
> due to your seizures. Her assessed work

> limitations would not prevent you from performing
> the past jobs identified by the vocational expert.

This is clearly a reasonable assessment of Dr. Jacob's statements. Those statements, therefore, do not warrant a remand.

On this point, as well as the next, the plaintiff indicates that Dr. Jacob's statements indicate a potential for drowsiness as a side effect of medication. Dr. Jacob, however, was simply noting that drowsiness would require adjustments of phenobarbital (Tr. 296, 297). There is nothing in Dr. Jacob's statements indicating that these adjustments would take as long as twelve months to become effective to eliminate drowsiness. Further, the statements did not imply that the plaintiff would be too drowsy to perform the jobs of fast food worker/cashier and stock clerk/inventory scanner.

As the Commissioner notes, the medical record does not contain any complaints of drowsiness prior to Dr. Jacob's statements. Moreover, the plaintiff was on seizure medication at the time he was performing the jobs of fast food worker and inventory scanner. Thus, it is evident that the plaintiff could perform those jobs again despite the need for seizure medication, although that medication may need to be adjusted from time to time.

In sum, the plaintiff's claim that the law judge failed to develop the record is meritless. In the first place, there was no such failure. In all events, the plaintiff has not shown clear prejudice or unfairness from a lack of a developed record.

What is not properly developed, however, is the plaintiff's third contention. In that issue, the plaintiff asks for a remand based upon the submission of new and material evidence to the Appeals Council. With respect to that issue, the Eleventh Circuit sought to clarify in Ingram v. Commissioner of Social Security Administration, 496 F.3d 1253 (11th Cir. 2007), the law concerning the nature and extent of judicial review of new evidence that was first presented to the Appeals Council. In my view, Ingram held that, when the Appeals Council considers new evidence and denies review, the district court should determine whether the Appeals Council has correctly decided that the law judge's findings are not contrary to the weight of all the evidence. See Tucker v. Astrue, 2008 WL 2811170 (M.D. Fla. 2008).

In his request for a remand, the plaintiff did not even mention Ingram or the standard of review it articulated. Significantly, a scheduling

Order was entered in this case which directed the plaintiff to support his challenges by, among other things, "citations of the governing legal standards" (Doc. 12, p. 2). Here, the plaintiff has failed to do that, so the contention is appropriately rejected due to that failure.

In any event, the contention is meritless. On this issue, the plaintiff relies principally upon the statements of Dr. Jacob. As previously explained, that evidence is not material in that there is not a reasonable possibility that the new evidence would change the administrative result for the reasons articulated by the Appeals Council. See Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998), cert. denied, 525 U.S. 1124 (1999).

The plaintiff also points to evidence that the plaintiff cut his right arm and wrist when he fell through a glass window, apparently during a seizure. There is no indication that the injury would limit the plaintiff for a period of twelve months. The Appeals Council reasonably discounted this problem as follows (Tr. 2-3):

> You had a seizure on December 6, 2004, and lacerated your right arm. However, there is no indication that this impairment would last for a period of 12 months or more. In this regard, you submitted a medical source statement from Priscilla Ross, who indicated in February 2005 that you

were temporarily unable to work. However, Ms. Ross did not state whether she is a doctor and provided no treatment or clinical records. She did not assess specific work-related functional limitations and she was unsure of how long you would be unable to work. For the above reasons, the Council gives these opinions no probative weight.

The request for a remand based on new evidence should therefore be rejected. The plaintiff did not properly develop that contention. Moreover, the new evidence is not material.

The plaintiff next contends that the law judge did not adequately explain his consideration of the testimony of the plaintiff's girlfriend and father. This contention is frivolous because their testimony did not support the plaintiff's claims, but rather cut against them.

The girlfriend's testimony contradicted the claims because, when she was asked if she noticed any difficulties with the plaintiff, she said "no" (Tr. 344). When asked that question subsequently, she again said "no" (Tr. 345).

The plaintiff's father testified that the plaintiff lived with his parents when he was not incarcerated (Tr. 347). The father said he had only

seen the plaintiff have one or two seizures in the previous year (Tr. 348). The law judge specifically recited this evidence (Tr. 41).

The plaintiff's mother submitted a letter on the plaintiff's behalf (Tr. 156). The letter essentially states that the plaintiff has suffered from seizures since age sixteen (id.). It does not indicate the frequency with which the seizures occur. To the extent that it added anything, the law judge appropriately considered it (Tr. 41).

The plaintiff next argues that the law judge failed to use the Eleventh Circuit pain standard. The Eleventh Circuit has articulated a standard for assessing allegations of pain and other subjective complaints. As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge concludes that there is an objectively determined medical condition which could reasonably be expected to produce disabling pain, the law judge "must

evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge acknowledged the pertinent standards for assessing the plaintiff's credibility (Tr. 40). Contrary to the plaintiff's assertion, the law judge does not have to quote the Eleventh Circuit's language or cite its decision. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

The law judge did not completely reject the plaintiff's testimony regarding seizures, but rather found that they were not totally incapacitating. Moreover, in his decision, he set forth adequate reasons for that determination. Thus, the law judge found that the plaintiff failed to comply with his medication regime (Tr. 41). He noted further that the plaintiff's daily activities "include helping with housework, vacuum[ing], laundry, yard work [and] playing on the computer" (Tr. 40). He also considered the unsupporting testimony of the plaintiff's girlfriend and his father (Tr. 41).

The law judge pointed out further that the plaintiff was incarcerated from June 6, 2003, to October 5, 2003, and from November 17,

2003, until May 14, 2004, and has been incarcerated six to ten times for armed robbery, auto burglary, violation of probation, and alleged robbery (Tr. 40). The law judge was justified in considering the convictions against the plaintiff when assessing his credibility. See Rule 609(a), F.R.E.

It is appropriate to add that the law judge provided an adequate basis for discounting the plaintiff's testimony that he had difficulty holding objects. In this respect, the law judge stated (Tr. 41):

> However, the consulting examiner on November 18, 2002[,] reported that the claimant's grip strength was 5/5 bilaterally. His fine manipulation was normal and he could easily handle things. This consultative examination was essentially normal (Exhibit 2F).

For these reasons, there is no basis to the plaintiff's contention that the law judge failed properly to apply the Eleventh Circuit's pain standard.

The plaintiff's next contention is that the law judge failed to recognize that the plaintiff had a learning impairment. This contention is purportedly based upon a report by Dr. David B. Kazar, who performed a consultative psychological evaluation (Doc. 13, p. 16). The plaintiff reads too much into Dr. Kazar's report (as he did with Dr. Jacob's statements).

Importantly, Dr. Kazar found no diagnosis or condition on either Axis I or II (Tr. 251). This indicates that the plaintiff has no significant mental or learning impairment (see Tr. 245).

Furthermore, even if the plaintiff had been diagnosed with a learning impairment, that would not support the plaintiff's claims. As the Commissioner points out, the plaintiff would have had that impairment his entire life. The plaintiff, nevertheless, was able to perform the jobs of fast food worker and inventory scanner. There is no reason to conclude that a life-long learning impairment would prevent the plaintiff from returning to those jobs.

The plaintiff's seventh, and final, contention is that the hypothetical question to the vocational expert was incomplete. To the extent that the plaintiff is arguing that the hypothetical question was deficient because it did not include certain symptoms, such as an I.Q. score, that argument misperceives the role of the vocational expert. The expert's role is simply to let the law judge decide the functional limitations in his assessment of residual functional capacity, and then opine whether an individual with those limitations could perform either past work or work that exists in the

national economy. Accordingly, the hypothetical question does not need to include each symptom of the claimant. Ingram v. Commissioner of Social Security Administration, supra, 496 F.3d at 1270.

Moreover, the hypothetical question appropriately included the functional limitations the law judge found to exist. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, supra, 284 F.3d at 1227. On the other hand, the law judge is not required to include in the hypothetical question allegations that have been properly rejected. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004).

In this case, the residual functional capacity found by the law judge (Tr. 42) was fully consistent with the limitations included in the hypothetical question posed to the vocational expert (Tr. 352). Consequently, the hypothetical question was not flawed.

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and does not contain any reversible error. I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: MAY 34 , 2009

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).